# EXHIBIT 2

 **CT** Corporation

**Service of Process Transmittal**
04/14/2021
CT Log Number 539387545

TO:     Megan Sousa
        Johnson & Johnson
        1 JOHNSON AND JOHNSON PLZ
        NEW BRUNSWICK, NJ 08933-0002

RE:     **Process Served in California**

FOR:    DePuy Orthopaedics, Inc.  (Domestic State: IN)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Diane Finley, Pltf. vs. Depuy Orthopaedics, Inc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint and Demand, Exhibit(s), Order, Certificate, Cover Sheet, Instructions, Addendum(s) and Statement(s), Notice(s), Attachment(s) |
| **COURT/AGENCY:** | Los Angeles County - Superior Court - Hill Street, CA<br>Case # 21STCV12473 |
| **NATURE OF ACTION:** | Product Liability Litigation - Personal Injury - Pinnacle Hip System Implant |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/14/2021 at 14:10 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | Tom G. Antunovich<br>Bisnar | Chase LLP<br>1301 Dove Street<br>Suite 120<br>Newport Beach, CA 92660<br>949-752-2999 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 04/15/2021, Expected Purge Date: 04/30/2021<br><br>Image SOP<br><br>Email Notification,  Ra-Jjcus Ldsop  RA-JJCUS-LDSOP@its.jnj.com<br><br>Email Notification,  Janet Lucas  Jlucas14@its.jnj.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>818 West 7th Street<br>Los Angeles, CA 90017<br>855-844-0739<br>ServiceSolutionsTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other

 CT Corporation

**Service of Process
Transmittal**
04/14/2021
CT Log Number 539387545

**TO:**   Megan Sousa
Johnson & Johnson
1 JOHNSON AND JOHNSON PLZ
NEW BRUNSWICK, NJ 08933-0002

**RE:**   **Process Served in California**

**FOR:**   DePuy Orthopaedics, Inc.  (Domestic State: IN)

advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Page 2 of  2 / MD



# PROCESS SERVER DELIVERY DETAILS

**Date:**            Wed, Apr 14, 2021

**Server Name:**     Bernard Richards

| Entity Served | DEPUY ORTHOPAEDICS, INC. |
|---|---|
| Agent Name | |
| Case Number | 21stcv12473 |
| Jurisdiction | CA |



**COPY**

## SUMMONS
### (CITACION JUDICIAL)
**BY FAX**

SUM-100

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

**NOTICE TO DEFENDANT:** DEPUY ORTHOPAEDICS, INC., JOHNSON
*(AVISO AL DEMANDADO):* & JOHNSON SERVICES, INC., JOHNSON
& JOHNSON, INC., DEPUY INTERNATIONAL, LTD., THOMAS P.
SCHMALZRIED, M.D., THOMAS P. SCHMALZRIED, M.D. A
PROFESSIONAL CORPORATION; and DOES 1 through 20,
inclusive

**CONFORMED COPY**
**ORIGINAL FILED**
Superior Court of California
County of Los Angeles

**APR 0 1 2021**

Sherri R. Carter, Executive Officer/Clerk of Court

**YOU ARE BEING SUED BY PLAINTIFF:** DIANE FINLEY
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero o bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Los Angeles Superior Court<br>111 North Hill Street<br>Los Angeles, CA 90022 | CASE NUMBER:<br>*(Número del Caso):*<br>**21STCV12473** |

**RECEIVED**
**FILING WINDOW**
**APR 0 1 2021**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
BISNAR | CHASE LLP
1301 Dove Street, Suite 120, Newport Beach, CA 902600
Tel: (949) 752-2999 | Fax: (949) 752-2777

| DATE: **APR 0 1 2021** | Sherri R. Carter, Clerk | Clerk, by **STEVEN DREW** | , Deputy |
|---|---|---|---|
| *(Fecha)* | | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* DEPUY ORTHOPAEDICS, INC.

under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

**COPY**

**BY FAX**

1  **BISNAR | CHASE LLP**
   BRIAN D. CHASE, SBN 164109
2  *bchase@bisnarchase.com*
   TOM G. ANTUNOVICH, SBN 305216
3  *tantunovich@bisnarchase.com*
   1301 Dove Street, Suite 120
4  Newport Beach, California 92660
   Telephone: (949) 752-2999
5  Facsimile: (949) 752-2777
6
7  *Attorneys for Plaintiff*
   DIANE FINLEY
8
9

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

APR 01 2021

Sherri R. Carter, Executive Officer/Clerk of Court

10              **SUPERIOR COURT OF CALIFORNIA**

11           **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

12

13  DIANE FINLEY,                    CASE NO.: **21STCV12473**

14          Plaintiff,               Judge:

15      v.                           **COMPLAINT FOR DAMAGES**

16  DEPUY ORTHOPAEDICS, INC.,        (1) **STRICT PRODUCT LIABILITY**
    JOHNSON & JOHNSON SERVICES, INC., (2) **NEGLIGENCE**
17  JOHNSON & JOHNSON, INC., DEPUY   (3) **FRAUD**
    INTERNATIONAL, LTD., THOMAS P.   (4) **NEGLIGENT**
18  SCHMALZRIED, M.D., THOMAS P.         **MISREPRESENTATION**
    SCHMALZRIED, M.D. A PROFESSIONAL (5) **BREACH OF IMPLIED**
19  CORPORATION; and DOES 1 through 20,     **WARRANTIES, and**
    inclusive,                       (6) **BREACH OF EXPRESS**
20                                       **WARRANTY**
            Defendants.
21
22                                   **DEMAND FOR JURY TRIAL**
23

24      1.      This is a product liability case involving a defective hip implant system. Plaintiff

25  Diane Finley had a Pinnacle Hip System implanted in her right hip. The Pinnacle Hip System

26  suffers from defects that cause excessive amounts of cobalt and chromium to wear from the surface

27  of the acetabular insert and from the femoral head, which in turn causes the hip implant to fail and

28  the surrounding tissue and bone to die. As a result of these defects, Ms. Finley's Pinnacle Hip

                                         1

─────────────────────────────────────────────────────

           COMPLAINT AND DEMAND FOR JURY TRIAL

1   System failed in her body, causing excessive and toxic levels of cobalt and chromium, tissue and

2   bone destruction, and pain and suffering that required Ms. Finley to undergo complicated and risky

3   surgery to remove and replace the defective implant.

### JURISDICTION AND VENUE

5       2.    This Court has jurisdiction over this action pursuant to CALIFORNIA CODE OF

6   CIVIL PROCEDURE§ 410.10.

7       3.    Venue is proper in this Court pursuant to CALIFORNIA CODE OF CIVIL

8   PROCEDURE§ 395.

### PARTIES

10       4.    Plaintiff Diane Finley is domiciled in and a citizen of the State of Tennessee. Ms.

11   Finley was implanted with the defective hip implant system on December 2, 2002 at Baptist

12   Hospital in the City of Nashville, State of Tennessee.

13       5.    On information and belief, Defendant DePuy Orthopaedics, Inc. ("DePuy") is a

14   corporation organized and existing under the laws of Indiana with its primary place of business in

15   Warsaw, Indiana. DePuy developed, manufactured, advertised, promoted, marketed, sold and/or

16   distributed the Pinnacle Hip System that is the subject of this lawsuit.

17       6.    On information and belief, Defendant Johnson & Johnson, Inc. ("J&J") is a

18   corporation organized and existing under the laws of New Jersey with its primary place of business

19   in New Brunswick, New Jersey. J&J developed, manufactured, advertised, promoted, marketed,

20   sold and/or distributed the Pinnacle Hip System that is the subject of this lawsuit.

21       7.    On information and belief, Defendant Johnson & Johnson Services, Inc. ("JJSI") is

22   a corporation organized and existing under the laws of New Jersey with its primary place of

23   business in New Brunswick, New Jersey. JJSI developed, manufactured, advertised, promoted,

24   marketed, sold and/or distributed the Pinnacle Hip System that is the subject of this lawsuit.

25       8.    On information and belief, Defendant DePuy International, Ltd. ("DIL") is a

26   corporation organized under the laws of the United Kingdom with its primary place of business in

27   Leeds, England. DIL developed, manufactured, advertised, promoted, marketed, sold and/or

28   distributed the Pinnacle Hip System that is the subject of this lawsuit.

COMPLAINT AND DEMAND FOR JURY TRIAL

9.     On information and belief, Defendant Thomas Schmalzried ("Schmalzried") is a citizen and resident of the State of California and he resides in Los Angeles. His involvement in this case is described in detail in the following paragraph. Thomas Schmalzried is not a fraudulently joined California defendant. A true and correct copy of the Superior Court of California for the County of San Francisco's Order (3/15/2019) filed in Judicial Council Coordinated Proceeding No. 4649: *In re: DePuy ASR Hip™ Cases*, stating that triable issues of material fact exist with regard to Dr. Schmalzried's liability under *Bay Summitt Community Assn. v. Shell Oil Co.* (1996) 51 Cal.App.4th 762, for his involvement in the marketing/distribution process of defective DePuy Hip Systems, is attached hereto as Exhibit 1.

10.     On information and belief, Defendant Thomas P. Schmalzried, M.D. A Professional Corporation ("TPS Corp.") is a corporation organized and existing under the laws of California with its primary place of business in Los Angeles, California. Thomas P. Schmalzried, M.D. is believed to be the sole shareholder and employee of TPS Corp. TPS Corp. and Schmalzried designed the Pinnacle Hip System hip implants that are the subject of this lawsuit. TPS Corp. and Schmalzried collect royalties for each hip implant sold, and in the last two years alone, they have collected more than $3.4 million in such royalty payments. In addition to designing the Pinnacle Hip System hip implants that were implanted in Ms. Finley and collecting royalties for the sale of Ms. Finley's implant, TPS Corp. and Schmalzried were actively involved in promoting and marketing the Pinnacle Hip System hip implant. TPS Corp., by and through its shareholder, director, and officer, Dr. Thomas Schmalzried, was a "product champion" for the Pinnacle Hip System. In the orthopedics community, a "product champion" uses the reputation as a prominent orthopedic surgeon to encourage other orthopedic surgeons to use a particular orthopedic implant. In his role as a "product champion" for the Pinnacle Hip System, Dr. Schmalzried, on behalf of TPS Corp., induced the sale of Ms. Finley's implant by making representations to orthopedic surgeons, including Ms. Finley's orthopedic surgeon, that the Pinnacle Hip System was safe and effective. As a product champion for the Pinnacle Hip System, Schmalzried and TPS Corp. also played an integral role in DePuy's sale of the Pinnacle Hip System to Ms. Finley.  DePuy could not have sold the Pinnacle Hip System without the endorsement of Schmalzried, and Schmalzried's

3

COMPLAINT AND DEMAND FOR JURY TRIAL

1   design and promotion of the implants were necessary factors in bringing the products to the market.
2   Given their prominent and necessary role as a product designer and product champion, Schmalzried
3   and TPS Corp. also had a substantial ability to influence DePuy's manufacturing and distribution
4   process. For example, if Schmalzried believed that a change should be made to the design,
5   manufacturing process, or warnings that accompanied the Pinnacle Hip System, DePuy would have
6   been required to make these changes otherwise it would have lost Schmalzried's endorsement and
7   would not have been able to sell the hip implant. Although TPS Corp. and Schmalzried had the
8   ability to change the design and manufacturing specifications of the Pinnacle Hip System, they
9   failed to do so after they learned that the product was defective. TPS Corp. and Schmalzried knew
10  or should have known about defects in the Pinnacle Hip System at the time these products were
11  sold to and implanted in Ms. Finley. Despite this knowledge, Schmalzried and TPS Corp. did not
12  disclose that information to Ms. Finley or her doctors. Schmalzried and TPS Corp. had full
13  knowledge of each report of failure of the Pinnacle Hip System. As reports of failures of the
14  Pinnacle Hip System mounted, Schmalzried and TPS Corp. conspired with the other Defendants
15  in this action to conceal this information from patients and orthopedic surgeons, including Ms.
16  Finley's orthopedic surgeons, and to deflect blame for the growing problems with the implants.
17  Despite a legal duty to disclose information about the defects of which Schmalzried and TPS Corp.
18  were aware to Ms. Finley and her doctors, Schmalzried and TPS Corp. instead actively concealed
19  these known defects and they instead deflected blame for the mounting failures by blaming the
20  surgical technique of the implanting orthopedic surgeon. To this day, Schmalzried and TPS Corp.
21  continue to conspire with the other Defendants in this action to conceal the true information about
22  the defects in the Pinnacle Hip System, and Schmalzried and TPS Corp. continue their aggressive
23  promotion of the defective Pinnacle Hip System.
24          11.     The true names and capacities of Does 1 through 20 are unknown to Ms. Finley.
25  She is informed and believes and thereon alleges that each of these Defendants are in some way
26  liable for the events referred to in this Complaint and caused damage to her. Ms. Finley will amend
27  this Complaint and insert the correct names and capacities of those Defendants when they are
28  discovered.

4

COMPLAINT AND DEMAND FOR JURY TRIAL

12.     At all times mentioned, each of the Defendants, including DOES 1 through 20, was the representative, agent, employee, joint venturer, or alter ego of each of the other defendants and in doing the things alleged herein was acting within the scope of its authority as such. Specifically, each Defendant was but an instrumentality or conduit of the other in the prosecution of a single venture, namely the design, promotion, and sale of the Pinnacle Hip System. Therefore, it would be inequitable for any Defendant to escape liability for an obligation incurred as much for that Defendant's benefit as for the other Defendants.

13.     DePuy, J&J, JJSI, DIL, Schmalzried, TPS Corp., and DOES 1 through 20 are collectively referred to herein as "Defendants."

## FACTUAL BACKGROUND

**A.          The Pinnacle Hip System is Defective and was Not Adequately Tested**

14.     The hip joint is where the femur connects to the pelvis. The joint is made up of the femoral head (a ball-like structure at the very top of the femur) rotating within the acetabulum (a cup-like structure at the bottom of the pelvis.) In a healthy hip, both the femur and the acetabulum are strong and the rotation of the bones against each other is cushioned and lubricated by cartilage and fluids.

### ANTERIOR HIP JOIN



15.     A total hip replacement replaces the body's natural joint with an artificial one, usually made out of metal and plastic. A typical total hip replacement system consists of four separate components: (1) a femoral stem (labeled as "hip implant" in the diagram below), (2) a femoral head, (3) a plastic (polyethylene) liner, and (4) an acetabular shell. After the surgeon

5

COMPLAINT AND DEMAND FOR JURY TRIAL

1    hollows out a patient's femur bone, the femoral stem is implanted. The femoral head is a metal ball

2    that is fixed on top of the femoral stem. The femoral head forms the hip joint when it is placed

3    inside the polyethylene liner and acetabular shell.



14       16.    While most hip replacements use a polyethylene *plastic* acetabular liner, DePuy's

15   Pinnacle Hip System has a critical difference: it uses a *metal* acetabular liner. By using a metal

16   acetabular liner and a metal femoral ball, the Pinnacle Hip System forces metal to rub against metal

17   with the full weight and pressure of the human body. Because of Defendants' defective design for

18   the Pinnacle Hip System, hundreds of patients-including Ms. Finley-have been forced to undergo

19   surgeries to replace the failed hip implants.

20       17.    The Pinnacle Hip System suffers from a similar design or manufacturing defect that

21   forced DePuy to recall over 93,000 metal-on-metal ASR and ASR XL hip implants. While the

22   exact nature of the common defect is still being investigated, Ms. Finley believes that her hip

23   implant suffers from one or more similar design or manufacturing defects that cause excessive

24   amounts of cobalt and chromium to wear from the surface of the acetabular insert or from the

25   femoral head. These cobalt and chromium fragments prompt the body to react by rejecting the hip

26   implant. This rejection often manifests with symptoms of pain, looseness, dislocation, and

27   squeaking and popping sounds. Inside the hip joint, the metal reaction often causes fluids to

28   accumulate and soft tissues and bone to die.

6

18.     The design of the Pinnacle Hip System was not sufficiently tested by the Defendants, and it was never approved by the FDA as being safe or effective for the products' intended purpose.

19.     Together with the other Defendants, Defendants Schmalzried and TPS Corp. were integral participants in the design, manufacture, and sale of the Pinnacle Hip System to Ms. Finley, and these Defendants' promotion of the Pinnacle Hip System was a necessary factor in bringing the product to the market and selling it to Ms. Finley. For example, on numerous occasions, Schmalzried met with orthopedic surgeons, including Ms. Finley's orthopedic surgeon, to promote the Pinnacle Hip Implant. At some or all of these meetings, a representative or representatives of DePuy was present. During these meeting, Schmalzried and the DePuy representatives assured the orthopedic surgeons, including Ms. Finley's orthopedic surgeon, that the Pinnacle Hip System was safe, was the best product on the market, had an excellent track record and a low and acceptable failure rate. Schmalzried and the DePuy representatives continued to "defend" the Pinnacle Hip Implant even after they became aware of numerous and serious complications with the Pinnacle Hip System. Schmalzried and the DePuy representatives did not reveal (and instead concealed) their knowledge of numerous and serious complications and other "bad data" during their meetings with orthopedic surgeons, including Ms. Finley's orthopedic surgeon.

**B.      The Defendants Sold the Pinnacle Hip Implant To Ms. Finley After They Knew It Was Defective, That The Implant Had Injured Others, And That The Implant Would Injure Her**

20.     It wasn't long after the Defendants launched the Pinnacle Hip System that reports of failures began flooding into each of the Defendants. For example, on May 4, 2002, the Defendants received a complaint that a patient had to undergo a surgery to remove and replace the hip implant because the liner disassociated with the cup. DePuy closed its investigation of this complaint, finding that "corrective action is not indicated." Two weeks later, on May 17, 2002, the Defendants received another report that another patient had to undergo surgery to remove and replace a defective hip implant because the acetabular cup had loosened. Again, DePuy closed its investigation of this complaint, finding that "corrective action is not indicated."

7

COMPLAINT AND DEMAND FOR JURY TRIAL

21.     The Defendants would go on to receive hundreds of similar complaints reporting that the Pinnacle Hip System had failed due to premature loosening of the acetabular cup and that the failure had forced patients to undergo painful and risky surgeries to remove and replace the failed hip component. As the chart to the below shows, reports to the Defendants that the Pinnacle Hip System had failed are skyrocketing. For example, by the end of 2008, Defendants had received more than 430 reports and by the end of 2009, that number had increased to almost 750. To date, the Defendants have received more than *2,500* reports claiming that the Pinnacle Hip System failed.



22.     By the time the Defendants sold the Pinnacle Hip Systems to Ms. Finley, each of them, including DePuy, Schmalzried, and TPS, had received numerous complaints related to the Pinnacle Hip System. Consequently, each of the Defendants was fully aware that the Pinnacle Hip System was defective and that dozens of patients already had been injured by that defect. Based on this information, the Defendants should have recalled the Pinnacle Hip System before it was sold to Ms. Finley. At minimum, the Defendants should have stopped selling the defective implant when they became aware that it had catastrophically failed in several patients.

23.     Despite their knowledge that the Pinnacle Hip System had a defect and that it had failed hundreds of times, causing hundreds of patients to undergo the agony of another surgery, the Defendants continued to sell the defective hip implant. In so doing, the Defendants actively

8

COMPLAINT AND DEMAND FOR JURY TRIAL

1  concealed the known defect from doctors and patients-including Ms. Finley and her doctor-and

2  misrepresented that the Pinnacle Hip System was a safe and effective medical device.

3      24.    As numerous failures of the Pinnacle Hip Implant were reported to each of the

4  Defendants, including DePuy, Schmalzried, and TPS Corp., they continued to actively promote,

5  market and defend the defective products. For example, Schmalzried authored many marketing

6  brochures for DePuy touting the safety and durability of metal-on-metal implants and specifically,

7  the Pinnacle Hip System. These brochures containing Schmalzried's endorsements were given to

8  doctors around the world, including Ms. Finley's orthopedic surgeon, to encourage them to use the

9  Pinnacle Hip System. In the brochure titled "Advancing High Stability and Low Wear,"

10 Schmalzried made several false representations about the quality and safety of the Pinnacle Hip

11 System. For example, he said:

12      • "Modular acetabular components, such as Pinnacle™, have the advantage of a high

13        stability, low wear metal or crosslinked polyethylene bearing within the same

14        construct."

15      • "There is no mystery regarding the allure of metal-on-metal bearings: 1) larger

16        diameter bearings have greater stability and 2) when properly positioned, the wear

17        rate has been documented to be very low in vivo for three decades."

18      • The wear of a well-made and well-mated metal-on-metal bearing is very low and

19        decreases as the diameter increases."

20      25.    Despite their knowledge that the Pinnacle Hip System was defective, Schmalzried

21 and TPS also made several false representations about specific design elements of the Pinnacle Hip

22 System that they claimed made it superior to other safer hip implants on the market. For example,

23 they said:

24      • "Given that the material has high carbon content, metallurgy has little effect on

25        bearing wear."

26      • "Low-carbon materials exhibit higher wear than high carbon materials."

27      • "There is little difference in the wear of high-carbon wrought or cast materials."

28      • "Initial running-in wear decreases as the bearing diameter increases and/or the

        diametrical clearance decreases."

9

COMPLAINT AND DEMAND FOR JURY TRIAL

1       •  "Lower clearance has been associated with lower ion levels in vivo."

2       26.     The Defendants' reason to conceal the defect in its Pinnacle Hip System is clear. In 2009 alone, DePuy brought in more than $5.4 billion in sales and Schmalzried and TPS brought in more than $2 million. Hip implant sales are critically important to DePuy's parent company, Johnson & Johnson, and DePuy is one of Johnson & Johnson's most profitable business groups. The Defendants were faced with a critical defect in one of their hip implant systems. The last thing the Defendants wanted to do was to admit that these popular products had a critical defect that could cause a premature failure, forcing patients to have to undergo another painful surgery. Focused on corporate profits, and at the expense of patient safety, each of the Defendants decided that they would continue to promote, market, and sell the Pinnacle Hip System despite the fact that they each knew the product was defective. To this day, the Defendants continue to sell these defective implants to unsuspecting patients without any warning about the risks or the failures that have been reported to the company.

**C.    Ms. Finley's Pinnacle Hip System Was Defective And Failed, and Forced Her To Need An Additional Painful And Risky Surgery**

27.     In December 2002, Ms. Finley underwent a surgical procedure to implant the Pinnacle Hip System in her right hip. By this time, each of the Defendants had already received numerous reports that the Pinnacle Hip System had failed and they knew that the product was defective, but Defendants refused to disclose that information to Ms. Finley, her physicians, or the public. Instead, the Defendants misrepresented to Ms. Finley and her orthopedic surgeon that the Pinnacle Hip System was safe and effective. In reliance on these representations, Ms. Finley's orthopedic surgeon made the decision to use the Pinnacle Hip System. If it were not for the misrepresentations made by each of the Defendants, including DePuy, Schmalzried, and TPS, Ms. Finley's orthopedic surgeon would not have used the Pinnacle Hip System in Ms. Finley's hip replacement surgery.

28.     As a result of the design, manufacture and composition of the Pinnacle Hip System, and its accompanying warnings and instructions (or lack thereof), Ms. Finley's hip implant failed, causing her severe pain.

COMPLAINT AND DEMAND FOR JURY TRIAL

29.     The failure of the Pinnacle Hip Systems also resulted in Ms. Finley's having toxic levels of cobalt and chromium in her body. The Pinnacle Hip System has an articulating surface that is made from cobalt and chromium. As the defective implant degrades in Ms. Finley's hip, toxic amounts of cobalt and chromium made their way into her hip joint, into her blood stream, and circulated around her body. These toxic metals damaged the tissue surrounding Ms. Finley's hip joint and are likely to have accumulated in her heart, lungs, kidneys, liver, and brain.

30.     An article published in the Journal of Joint and Bone Surgery describes some of the systemic effects that can be caused by exposure to high levels of cobalt and chromium in the blood, many of which were experienced by Ms. Finley as a result of the defective Pinnacle Hip System implanted in her body. Dr. Stephen S. Tower, a noted orthopedic surgeon from Alaska, profiled two patients who had ASR hip implants. One patient (Dr. Tower Herself) had a blood cobalt level of 122 µg/L and suffered from symptoms including impaired heart function, cognitive decline, depression, anxiety, headaches, irritability, fatigue, tinnitus, and high-frequency hearing loss. A second patient had blood cobalt levels of 23 µg/L and suffered from symptoms including cognitive decline, vertigo, hearing loss, groin pain, rashes, and dyspnea. Discussing these cases, Dr. Tower said:

> Patients with metal-on-metal hips are at risk for cobaltism if the bearings wear excessively or if renal function declines. Most patients with metal-on-metal implants have higher serum cobalt levels than industrial workers and may be at risk for subclinical cognitive and cardiac impairment. A serum cobalt level of > 20 µg/L is common in some groups of patients with metal-on-metal implants and may result in symptomatic neurological and cardiac cobaltism. Severe neurological and cardiac impairments have been reported in association with arthroprosthetic cobaltism when serum cobalt exceeds 60 µg/L.

31.     Ms. Finley has had to undergo a complex, risky, and painful surgery (known as a "revision surgery") to remove the failed Pinnacle Hip System from her right hip. Revision surgeries are generally more complex than the original hip replacement surgery, often because there is a reduced amount of bone in which to place the new hip implants. Revision surgeries also usually take longer than the original hip replacement surgery and the revision surgery has a higher rate of

11

COMPLAINT AND DEMAND FOR JURY TRIAL

complications. Ms. Finley underwent a revision surgery for her defective right hip on February 24, 2020.

32. Having to go through a revision surgery has subjected Ms. Finley to much greater risks of future complications than he had before the revision surgery. For example, several studies have found that a revision surgery causes a much higher risk of dislocation compared with an original hip replacement surgery. In one study conducted by Charlotte Phillips and her colleagues at Brigham and Women's Hospital in Boston, 14.4 percent of patients who underwent a revision surgery suffered from a dislocation compared with 3.9 percent of patients who underwent an original hip replacement surgery. In other words, hip replacement patients who have undergone a revision surgery are almost *four times more likely* to suffer from a hip dislocation than those who have not. (Phillips CB, et al. Incidence rates of dislocation, pulmonary embolism, and deep infection during the first six months after elective total hip replacement. American Journal of Bone and Joint Surgery 2003; 85:20-26.)

33. As a direct and proximate result of the failure of her defective Pinnacle Hip System and the Defendants' wrongful conduct, Ms. Finley sustained and continues to suffer economic damages, severe and possibly permanent injuries, pain, suffering and emotional distress. As a result, Ms. Finley has sustained and will continue to sustain damages in an amount to be proven at trial, but which will far exceed the jurisdictional minimum of this court.

## FIRST CAUSE OF ACTION
(Strict Product Liability)
Against All Defendants

34. Ms. Finley incorporates all of the preceding paragraphs of this Complaint as if fully set forth here and further alleges as follows:

35. Defendants designed, manufactured, promoted, distributed, marketed, and sold the Pinnacle Hip System.

36. Defendants Schmalzried and TPS Corp. were integral parts of the sale of the Pinnacle Hip System to Ms. Finley, and these Defendants' promotion of the Pinnacle Hip System was a necessary factor in bringing the product to the market and selling it to Ms. Finley.

12

COMPLAINT AND DEMAND FOR JURY TRIAL

37. At all times material hereto, the Pinnacle Hip System that was designed, manufactured, promoted, distributed, marketed, and sold by the Defendants was expected to reach, and did reach, prescribing physicians and consumers, including Ms. Finley and her physician, without substantial change in the condition in which it was sold.

38. At all times material hereto, the Pinnacle Hip System that was designed, manufactured, promoted, distributed, marketed, and sold by the Defendants was in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce. Such condition included, but is not limited to, one or more of the following particulars:

(a) When placed in the stream of commerce, the Pinnacle Hip System contained manufacturing defects, subjecting Ms. Finley and others to risks, including the risk that the acetabular component would not properly grow into the bone, causing the hip system to prematurely fail and requiring a complex, risky, and painful surgery to remove and replace the defective product;

(b) When placed in the stream of commerce, the Pinnacle Hip System contained unreasonably dangerous design defects and was not reasonably safe for the intended use, subjecting Ms. Finley and others to risks, including the risk that the acetabular component would not properly grow into the bone, causing the hip system to prematurely fail and requiring a complex, risky, and painful surgery to remove and replace the defective product;

(c) The Pinnacle Hip System was insufficiently tested; and

(d) The Pinnacle Hip System was not accompanied by adequate instructions and/or warnings to fully inform Ms. Finley or her physicians of the full nature or extent of the risks associated with its use.

39. Defendants knew or should have known of the dangers associated with the use of the Pinnacle Hip System, as well as the defective nature of the Pinnacle Hip System. Despite this knowledge, Defendants continued to manufacture, sell, distribute, promote and supply the Pinnacle Hip System so as to maximize sales and profits at the expense of the public health and safety. Defendants' conduct was done in conscious disregard of the foreseeable harm caused by the Pinnacle Hip System and in conscious disregard for the rights and safety of consumers such as Ms. Finley.

COMPLAINT AND DEMAND FOR JURY TRIAL

40.     Ms. Finley and her doctor used the Pinnacle Hip System as directed for its intended purpose.

41.     At all times herein mentioned, the Pinnacle Hip System was defective, and Defendants knew that it was to be used by the user without inspection for defects therein. Moreover, at the time of the use of the subject products, neither Ms. Finley nor her physician knew or had reason to know of the existence of the aforementioned defects. Neither Ms. Finley nor her physicians could have discovered the defects in the Pinnacle Hip System through the exercise of reasonable care.

42.     The Pinnacle Hip System had not been materially altered or modified prior to its implantation in Ms. Finley.

43.     As a direct and proximate result of the failure of the defective Pinnacle Hip System, Ms. Finley suffered the injuries and damages as described herein.

## SECOND CAUSE OF ACTION
(Negligence)
Against All Defendants

44.     Ms. Finley incorporates all of the preceding paragraphs of this Complaint as if fully set forth here and further alleges as follows:

45.     At all times herein mentioned Defendants had a duty to exercise reasonable care in the design, manufacture, testing, inspection, labeling, promotion, marketing, and sale of the Pinnacle Hip System to ensure that it would be safely used in a manner and for a purpose for which it was made.

46.     Defendants maliciously, recklessly and/or negligently failed to exercise ordinary care in the design, manufacture, testing, inspection, labeling, promotion, marketing, and sale of the Pinnacle Hip System.

47.     Defendants maliciously, recklessly and/or negligently failed in their duty to exercise reasonable care in the provision of an adequate warning to Ms. Finley and her physicians as to the risks of the Pinnacle Hip System.

48.     Defendants maliciously, recklessly and/or negligently failed to exercise reasonable

14

COMPLAINT AND DEMAND FOR JURY TRIAL

1    care in the post-marketing warnings as to the risks of the Pinnacle Hip System when they knew or
2    should have known of said risks.

3           49.    Defendants' conduct was done in conscious disregard of the foreseeable harm
4    caused by the Pinnacle Hip System and in conscious disregard for the rights and safety of
5    consumers such as Ms. Finley.

6           50.    As a result of Defendants' wrongful conduct, Ms. Finley suffered injuries and
7    damages as alleged herein.

8

9                                    **THIRD CAUSE OF ACTION**
                                            (Fraud)
10                                       Against All Defendants

11          51.    Ms. Finley incorporates all of the preceding paragraphs of this Complaint as if fully
12   set forth here and further alleges as follows:

13          52.    As set forth above, Defendants made numerous representations to Ms. Finley, and
14   her orthopedic surgeon, that the Pinnacle Hip System was safe, effective and that Pinnacle Hip
15   System had specific design elements that made it superior to other safer implants on the market.

16          53.    These representations were knowingly false when made by Defendants and were
17   made with the intention to deceive and induce Ms. Finley and her doctors to use the Pinnacle Hip
18   System. Furthermore, Defendants knew about defects in the Pinnacle Hip System at the time the
19   Pinnacle Hip System was sold to and implanted in Ms. Finley but did not disclose that information
20   to Ms. Finley or her doctors.

21          54.    Ms. Finley, and her doctors, at the time these representations were made, were
22   ignorant of the falsity of the representations and were justified in relying on Defendants'
23   representations.

24          55.    As a proximate result of Defendants' fraudulent conduct, Ms. Finley has been, and
25   continues to be damaged in a sum yet to be fully determined, but will be proven at trial, which
26   exceeds the jurisdictional minimum of this court.

27          56.    Defendants' acts, representations or omissions, as set forth above, were done in
28   conscious disregard of Ms. Finley's rights and with oppression, fraud, malice, justifying an award

15

COMPLAINT AND DEMAND FOR JURY TRIAL

1    of punitive damages.

2

3                          **FOURTH CAUSE OF ACTION**

4                          (Negligent Misrepresentation)
                           Against All Defendants

5          57.     Ms. Finley incorporates all of the preceding paragraphs of this Complaint as if

6 fully set forth here and further alleges as follows:

7          58.     As set forth above, Defendants made numerous representations to Ms. Finley, and

8 her orthopedic surgeon, that the Pinnacle Hip System was safe, effective and that Pinnacle Hip

9 System had specific design elements that made it superior to other safer implants on the market.

10 At the time these statements were made, Defendants had no reasonable grounds for believing them

11 to be true and Defendants made the representations negligently and carelessly and with the

12 intention of inducing Ms. Finley and her orthopaedic surgeon to use the Pinnacle Hip System.

13          59.     Ms. Finley, and her doctors, at the time these representations were made were

14 ignorant of the falsity of the representations and were justified in relying on these representations.

15          60.     As a proximate result of Defendants' conduct, Ms. Finley has been, and continues

16 to be damaged in a sum yet to be fully determined, but will be proven at trial, which exceeds the

17 jurisdictional minimum of this court.

18          61.     Defendants' acts, representations or omissions, as set forth above, were done in

19 conscious disregard of Ms. Finley's rights and with oppression, fraud, malice, justifying an award

20 of punitive damages.

21                          **FIFTH CAUSE OF ACTION**

22                          (Breach of Implied Warranties)
                           Against All Defendants

23          62.     Ms. Finley incorporates all of the preceding paragraphs of this Complaint as if

24 fully set forth here and further alleges as follows:

25          63.     Prior to the time that the Pinnacle Hip System was used by Ms. Finley, Defendants

26 impliedly warranted to Ms. Finley and her physicians that the Pinnacle Hip System was of

27 merchantable quality and safe and fit for the use for which it was intended.

28

16

---

COMPLAINT AND DEMAND FOR JURY TRIAL

64.     Ms. Finley and her physician were and are unskilled in the research, design and manufacture of the Pinnacle Hip System, and they reasonably relied entirely on the skill, judgment and implied warranty of Defendants in using the Pinnacle Hip System.

65.     The Pinnacle Hip System was neither safe for its intended use nor of merchantable quality, as warranted by Defendants, in that it had dangerous propensities when put to its intended use and would cause severe injuries to the user.

66.     Defendants, by selling, delivering and/or distributing the defective Pinnacle Hip System to Ms. Finley, breached the implied warranty of merchantability and fitness and caused Ms. Finley to suffer severe pain and emotional distress, incur medical expenses and incur a loss of earning capacity.

67.     As a result of the aforementioned breach of implied warranties by Defendants, Ms. Finley suffered injuries and damages as alleged herein.

### SIXTH CAUSE OF ACTION
(Breach of Express Warranty)
Against All Defendants

68.     Ms. Finley incorporates all of the preceding paragraphs of this Complaint as if fully set forth here and further alleges as follows:

69.     At all times herein mentioned, Defendants expressly warranted to Ms. Finley and her physicians, by and through statements made by Defendants or their authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that the aforementioned Pinnacle Hip System was safe, effective, fit and proper for its intended use.

70.     In utilizing the aforementioned Pinnacle Hip System, Ms. Finley and her physician relied on the skill, judgment, representations and foregoing express warranties of Defendants.

71.     Said warranties and representations were false in that the aforementioned Pinnacle Hip System was not safe and was unfit for the uses for which it was intended.

72.     As a result of the foregoing breach of express warranties by Defendants, Ms.

17

COMPLAINT AND DEMAND FOR JURY TRIAL

Finley suffered injuries and damages as alleged herein.

## PRAYER FOR RELIEF

THEREFORE, Ms. Finley demands judgment for the following:

1. Past and future lost wages, medical and incidental expenses, according to proof;

2. Past and future general damages, according to proof;

3. Punitive and exemplary damages in an amount to be determined at trial;

4. Prejudgment and post judgment interest;

5. Costs to bring this action; and

6. Such other and further relief as the court may deem just and proper.

Dated: April 1, 2021

BISNAR|CHASE LLP

By:
Brian D. Chase
Tom G. Antunovich
*Attorneys for Plaintiff*
*Diane Finley*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury of this action.

Date: April 1, 2021

BISNAR|CHASE LLP

By:
Brian D. Chase
Tom G. Antunovich
*Attorneys for Plaintiff*
*Diane Finley*

18

COMPLAINT AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

19

COMPLAINT AND DEMAND FOR JURY TRIAL

i

1

2

3

4

F I L E D

Superior Court of California
County of San Francisco

MAR 1 5 2019

5

CLERK OF THE COURT

6

BY: _____
                              Deputy Clerk

7

SUPERIOR COURT OF CALIFORNIA

8

COUNTY OF SAN FRANCISCO

9

DEPARTMENT 305

10

11

COORDINATION PROCEEDING SPECIAL
TITLE
[RULE 3.550(c)]

Case No. CJC-10-004649
JUDICIAL COUNCIL COORDINATION
PROCEEDING NO. 4649

12

DePUY ASR HIP™ SYSTEM CASES

13

This document relates to:

14

*James Pool v. DePuy Orthopaedics, Inc., et al.,*
Los Angeles Superior Court, Case No.:
BC465008

15

16

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT THOMAS SCHMALZRIED,
M.D.'S MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, SUMMARY
ADJUDICATION

17

        Defendant Thomas Schmalzried, M.D. ("Dr. Schmalzried") moved for summary judgment, or in

18

the alternative, summary adjudication, of Plaintiff James Pool's ("Plaintiff") claims pursuant to Code of

19

Civil Procedure section 437c.  The motion came on for hearing on March 8, 2019, and appearances are

20

as noted in the record.  Having considered the papers filed in support and opposition to the motion and

21

the oral arguments of counsel, good cause appearing, the Court grants the motion with respect to

22

Plaintiff's fraud claim and denies it in all other respects.[1]

23

**I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

24

        Plaintiff filed this lawsuit on July 7, 2011 in connection with injuries he allegedly sustained from a

25

26

27

28

---

[1] With the exception of the specific evidence cited herein, none of the other evidence submitted by the
parties are material to the Court's ruling on the instant motion.  Accordingly, the Court does not rule on
the parties' objections to these other evidence, and the objections are deemed preserved on appeal.  *See*
Code Civ. Proc. § 437c(q).  Plaintiff's request for judicial notice of three orders issued in unrelated federal
actions is granted pursuant to Evidence Code section 452(d).

- 1 -

E-SERVICE
63073243
Mar 15 2019
02:59PM
File & ServeXpress

1   metal-on-metal hip implant known as the ASR™ XL Hip System ("ASR XL" or "ASR System").

2   Plaintiff sued defendants DePuy Orthopaedics, Inc. ("DePuy"), Johnson & Johnson Services, Inc.,

3   Johnson & Johnson, Inc., Thomas Schmalzried, M.D., and the Vail Defendants.  The remaining claims in

4   Plaintiff's operative complaint are for (1) Strict Liability – Failure to Warn; (2) Negligence - Negligent

5   Design, Manufacture and Sale, Failure to Recall/Retrofit, and Failure to Warn; and (3) Fraud.  The

6   Complaint generally alleges that all defendants designed, distributed, manufactured, sold, and marketed

7   the ASR System.

8         It is undisputed that Dr. Schmalzried was an outside consultant hired by DePuy to be the Lead

9   Surgeon Designer for the ASR System.  Undisputed Material Fact ("UMF") Nos. 11-12.   Dr.

10  Schmalzried now seeks summary judgment or adjudication on Plaintiff's claims on the grounds that he

11  had no control over the manufacture, marketing, distribution, or labeling of the ASR System, and did not

12  make any direct statements to Plaintiff or his implanting surgeon, and therefore cannot be held liable

13  based on any theory asserted by Plaintiff.  He further contend that Plaintiff's negligence claim fails

14  because Plaintiff has no expert who can testify that he fell below the standard of care in connection with

15  his role in the ASR System.

16        In opposing the motion, Plaintiff presented evidence that he contends shows that Dr. Schmalzried

17  had an extensive contractual role with respect to the ASR System, was intimately involved in its design,

18  development, and marketing, and received royalty payments on product sales.  Plaintiff further contends

19  that his designated expert, Dr. George Samaras, will offer expert testimony to show that Dr. Schmalzried

20  fell below the applicable standard of care with regard to his role in the ASR System.

21  **II.     LEGAL STANDARD**

22        In the words of Code of Civil Procedure Section 437c, "any party may move for summary

23  judgment in any action or proceeding if it is contended that the action has no merit or that there is no

24  defense to the action or proceeding."  The party moving for summary judgment "bears the burden of

25  persuasion that there is no triable issue as to any material fact and that he is entitled to a judgment as a

26  matter of law." *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.  Moreover, the moving party

27  also "bears an initial burden of production to make a prima facie showing of the nonexistence of any

28

- 2 -

1   triable issue of material fact." *Id.*

2        A defendant moving for summary judgment carries his burden of persuasion and/or production by

3   "present[ing] evidence that would require such a trier of fact not to find any underlying material fact more

4   likely than not.  In the alternative, he may present evidence showing that the plaintiff did not possess, and

5   could not reasonably obtain, needed evidence. *Id.* at 854-55.

6        If the moving party carries his burden of production, "he causes a shift, and the opposing party is

7   then subjected to a burden of production to make a prima facie showing of the existence of a triable issue

8   of material fact." *Id.* at p. 850.  But if the moving party fails to carry his initial burden, he would not be

9   entitled to judgment as a matter of law, and would have to present his evidence to a jury. *Id.* at p. 851.

10  **III.   ANALYSIS**

11       **A.   Dr. Schmalzried's Motion is Procedurally Proper**

12       Plaintiff argues that Dr. Schmalzried's motion is procedurally barred under Code of Civil

13  Procedure sections 437c(f)(2) and 1008 because he formally joined DePuy's prior motion for summary

14  judgment/adjudication, and he is therefore precluded from bringing the instant motion in the absence of

15  newly discovered facts or circumstances or a change in the law.  However, DePuy's prior motion, which

16  Dr. Schmalzried joined, raised different issues,[2] and there is nothing under section 437c or section 1008

17  precluding Dr. Schmalzried from seeking summary judgment/adjudication based on different issues.

18       **B.   Triable Issues of Material Fact Exist as to the Strict Liability–Failure to Warn Claim**

19       Under California law, strict products liability "extends to nonmanufacturing parties outside the

20  vertical chain of distribution of a product, which play an integral role in the 'producing and marketing

21  enterprise' of a defective product and who profit from placing the product into the stream of commerce."

22  *Bay Summit Community Assn. v. Shell Oil Co.* (1996) 51 Cal.App.4th 762, 773.  "In applying this stream

23  of commerce theory, the courts have eschewed legal labels and have taken a very practical approach,

24  focusing on the actual connection between the defendant's activities and the defective product." *Id.* at

25  774.  Specifically, California courts have held a defendant involved in the marketing/distribution process

26

27  [2] DePuy's motion addressed whether DePuy's warnings were inadequate, whether any alleged failure to
    warn caused Plaintiff's injuries, and whether *DePuy* concealed material facts in support of Plaintiff's

28  fraud claim.

- 3 -

1    "strictly liable if three factors are present: (1) the defendant received a direct financial benefit from its

2    activities and from the sale of the product; (2) the defendant's role was integral to the business enterprise

3    such that the defendant's conduct was a necessary factor in bringing the product to the initial consumer

4    market; and (3) the defendant had control over, or a substantial ability to influence, the manufacturing or

5    distribution process." *Id.* at 776.

6          Dr. Schmalzried argues that Plaintiff's strict liability claim fails because (1) the rule in *Bay*

7    *Summit* extending strict products liability to nonmanufacturing parties does not apply to failure to warn

8    claims as a matter of law; and (2) even if *Bay Summit* applies, Plaintiff cannot present sufficient evidence

9    to establish each requisite *Bay Summit* factor.  As discussed below, the Court finds triable issues of

10   material fact exist with respect to whether Dr. Schmalzried can be held strictly liable for failure to warn

11   pursuant to the principles set forth in *Bay Summit*.

12          First, as a threshold matter, the Court concludes that strict products liability under the principles

13   set forth in *Bay Summit* extends to failure to warn claims.   Nothing in *Bay Summit* suggests that it should

14   not apply to strict liability failure to warn claims.  *Bay Summit* addressed whether Shell Oil Company

15   ("Shell"), a supplier of a non-defective raw material used in a defective plumbing system, can be held

16   strictly liable for product defects based on its marketing activities in connection with the defective

17   product. *Bay Summit*, *supra*, 51 Cal.App.4th at 772.  In determining whether to extend the strict liability

18   doctrine to Shell, the court cited a number of cases in which nonmanufacturing parties, such as, retailers,

19   marketers, and licensors, were held strictly liable for product defects.[3]   The inquiry in *Bay Summit*, as well

20   as in the cases cited by the court, was not whether the nonmanufacturing party affected the manufacturing,

21   design, or labeling of the defective product, but whether its marketing, distribution or other conduct

22   relating to the product justifies holding it strictly liable.  *See id.* at 772-773.  Indeed, in enumerating three

23   factors to consider when determining liability, the court did not distinguish between the three types of

24   product defects (i.e. manufacturing, design, or inadequate warning).[4]   *See id.* at 776.  Therefore, the

25

26   [3] At least one case cited in *Bay Summit* involved failure to warn claims against a nonmanufacturing party.
     *See Canifax v. Hercules Powder Co.* (1965) 237 Cal.App.2d 44, 50-52.
27   [4] The *Bay Summit* court did not specify the type of defect at issue in that case, but evidence presented at
     trial suggests that the plaintiff may have asserted failure to warn claims against Shell. *See id.* at 768-69
28   (plaintiff presented evidence at trial showing Shell was aware of the defects but failed to disclose them).

- 4 -

1    argument that Dr. Schmalzried played no role in the labeling of the ASR and therefore cannot be held

2    strictly liable for a failure to warn is at odds with the court's rationale in *Bay Summit*. Having concluded

3    that *Bay Summit* applies to Plaintiff's failure to warn claims against Dr. Schmalzried, the Court proceeds

4    to address whether Plaintiff can satisfy each of the three *Bay Summit* factors.

5            In connection with the second and third *Bay Summit* factors, it is undisputed that Dr. Schmalzried

6    was the Lead Surgeon Designer of the ASR System. UMF No. 11. Dr. Schmalzried had been involved

7    on the front end of the ASR's development with the surgeon design team as early as 2001. UMF No. 12.

8    According to DePuy, Dr. Schmalzried's contributions to the ASR System include the following: 1)

9    internally tapered femoral component; 2) minimal central stem; 3) sub-hemispherical, bone conserving

10   acetabular component; 4) clear view internal attachment of cup inserter/extractor; 5) medium low

11   viscosity, low insertion force cement technique (and instruments); 6) education and marketing materials;

12   and 7) Pinnacle-style shortened spikes.[5] Declaration of Emily M. Weissenberger ISO Vail Defendants'

13   Motion for Summary Judgment ("Weissenberger Decl."), Ex. 3 ("Legacy Royalty Summary") at 13.

14   DePuy also indicated that Dr. Schmalzried provided specific input into 1) the internal geometry of the

15   ASR-XL head; 2) the size range of the ASR-XL taper inserts; 3) the development of overlay templates for

16   pre-operative planning and 4) education and marketing materials. *Id.* Dr. Schmalzried alo attended and

17   participated in a number of one-on-one meetings with DePuy, including one where he provided input on

18   various components of the ASR's head design, cups, and instrumentation; Dr. Schmalzried attended and

19   participated in a number of surgeon design team meetings; and attended at least one cadaver workshop.

20   *Id.* at 8-10. According to DePuy, Dr. Schmalzried also participated in an FDA approved clinical trial of

21   the ASR. *Id.* at 13. The Agreement between DePuy and Dr. Schmalzried acknowledged that Dr.

22   Schmalzried "contributed significantly to the development of the [ASR System]." Declaration of Brian

23   Chase in Opposition to Motion ("Chase Decl."), Ex. 4 ("Schmalzried Depo"), Depo Ex. 33

24   ("Agreement") at 4.1.

25            Apart from his involvement in the design of the ASR System, Dr. Schmalzried also contributed to

26

27   ───────────────────
     [5] Notwithstanding his own characterization of his contributions to the ASR System, Dr. Schmalzried now
     argues that the foregoing list is an inaccurate characterization of what design contributions were actually
28   accepted and/or implemented by DePuy. UMF No. 21.

- 5 -

*DePuy ASR* JCCP 4649 (James Pool)  Order Granting in Part and Denying in Part Dr. Schmalzried's Motion for Summary
Judgment/Adjudication

1  the marketing of the ASR System.  Indeed, the Agreement between DePuy and Dr. Schmalzried obligated

2  Dr. Schmalzried to "speak about proper FDA uses of the Products, participate in training of DePuy's sales

3  personnel in proper FDA approved uses of the Products, including opening his operating room to

4  demonstrate proper uses of the Products, to assist DePuy in preparing surgical techniques, abstracts,

5  poster exhibits, scripts for training videos, and other information about the Products and to meet with

6  DePuy personnel to review the development and performance of the Products."[6]  Agreement at 5.  Dr.

7  Schmalzried testified during his deposition that he regularly assisted DePuy in the preparation of

8  education and marketing materials.  UMF No. 29.

9        The foregoing evidence demonstrates that Dr. Schmalzried had significant involvement in the

10  design and marketing of the ASR System.  Indeed, DePuy itself has indicated that "there was a *bona fide*

11  commercial need for Dr. Schmalzried's participation on the design team."  Legacy Royalty Summary at 5.

12  These and other evidence raise triable issues of material fact with respect to the second and third *Bay*

13  *Summit* factors, i.e. whether Dr. Schmalzried was a "necessary factor" in bringing the ASR System to the

14  market, and whether Dr. Schmalzried had "control over or a substantial ability to influence" the

15  manufacturing process.  *Bay Summit, supra,* 51 Cal.App.4th at 776.

16        Plaintiff also presented evidence sufficient to raise triable issues of material fact with respect to

17  the first *Bay Summit* factor, i.e. whether Dr. Schmalzried received a direct financial benefit from his

18  activities and from the sale of the product.  *Bay Summit, supra,* 51 Cal.App.4th at 776.  It is undisputed

19  that Dr. Schmalzried received royalty payments from DePuy equal to 2% on DePuy's net sales of all ASR

20  XLs sold worldwide.  UMF No. 38.

21        Because triable issues of material fact exist with respect to each of the *Bay Summit* factors, the Dr.

22  Schmalzried's motion is denied as to Plaintiff's strict liability - failure to warn claim.

23        **C.      Dr. Schmalzried Owed Plaintiff a Duty of Care and Triable Issue of Material Fact**

24  **Exists as to Whether He Fell Below the Standard of Care**

25        Dr. Schmalzried argues that Plaintiff's negligence claim fails as a matter of law because (1) Dr.

26  Schmalzried had no control over the manufacturing, distribution or recall process, and therefore did not

27  owe Plaintiff a legal duty; (2) Plaintiff cannot present the requisite expert testimony showing that Dr.

28  [6] The parties agree that the term "Products" in the Agreement includes and/or refers to the ASR System.

- 6 -

1   Schmalzried's conduct fell below the applicable standard of care; and (3) with respect to Plaintiff's claim

2   for negligent retrofit or recall, no such claim is recognized in California for prescription medical devices.

3   As discussed below, the Court finds as a matter of law that Dr. Schmalzried owed a duty of care to

4   Plaintiff, and that a triable issue of material fact exists with respect to whether Dr. Schmalzried fell below

5   the applicable standard of care.

6       First, the Court finds as a matter of law that Dr. Schmalzried owed a duty of care to Plaintiff in

7   connection with his role in the ASR System.  The existence of duty in negligence actions is a question of

8   law for courts to decide.  *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674.  Whether a

9   defendant can be said to owe a duty of care to a person in the absence of privity is a matter of policy and

10  involves the balancing of a variety of factors, including, (1) the extent to which the transaction was

11  intended to affect the plaintiff; (2) the foreseeability of harm to plaintiff; (3) the degree of certainty that

12  the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the

13  injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing

14  future harm.  *Weseloh Family Ltd. Partnership v. K.L. Wessel Construction Co., Inc.* (2004) 125

15  Cal.App.4th 152, 165.  Balancing these factors, the Court finds that Dr. Schmalzried owed a duty of care

16  to Plaintiff.  As stated above, Plaintiff's evidence demonstrates that Dr. Schmalzried had significant

17  involvement in both the design and marketing of the ASR XL, which was implanted in Plaintiff.  It is

18  foreseeable that any negligence on the part of Dr. Schmalzried in his role as design surgeon would harm

19  Plaintiff and others implanted with the device.  Moreover, as a policy matter, designers of implantable

20  medical devices should owe a duty of care to the public so as to ensure that they will take utmost care and

21  remain diligent in the performance of their duties.

22      Second, triable issues of material fact exist with respect to whether Dr. Schmalzried fell below the

23  applicable standard of care in connection with his role in the ASR System.  Plaintiff designated George

24  Samaras, Ph.D. as an expert who will testify regarding Dr. Schmalzried's involvement in the ASR XL, as

25  well as the standard of care for design surgeons of medical devices.  Declaration of Christopher Norton

26  ISO Motion for Summary Judgment ("Norton Decl.") Ex. I ("Plaintiff's Expert Witness Designation") at

27  10.  Dr. Samaras' declaration and expert report details his opinions regarding DePuy's failure to comply

28

-7-

1   with various engineering standards and regulations. *See* Declaration of George Samaras, Ph.D. Samaras

2   Decl. ("Samaras Decl."), Ex. 2 ("Samaras Report"). For example, Dr. Samaras indicated in his expert

3   report that the "design inputs" in DePuy's Design History File were incorrect, incomplete or ambiguous,

4   resulting in DePuy's inability to correctly verify and/or validate the engineering design of the ASR

5   System. *Id.* at § 1. Although Dr. Samaras' declaration and expert report do not specifically refer to Dr.

6   Schmalzried, the evidence demonstrates that Dr. Schmalzried led the surgeon design team that provided

7   input and guidance to DePuy regarding various aspects of the design of the ASR System. It can be

8   inferred that the "design inputs" listed in DePuy's Design History File, which Dr. Samaras described as

9   deficient, are attributable to Dr. Schmalzried and the surgeon design team.

10          Dr. Schmalzried further objects to Dr. Samaras' testimony on the grounds that Dr. Samaras, who

11   is not an orthopedic surgeon or medical professional, is not qualified to testify as to the applicable

12   standard of care relating to Dr. Schmalzried. But Dr. Samaras will not testify regarding matters that

13   involve medical knowledge or judgment. Instead, Dr. Samaras' opinions detailed in his expert report

14   refer to general violations of design control and risk management standards applicable to medical devices.

15   *See generally* Samaras Report. As a Certified Quality Engineer and a Certified Professional Ergonomist,

16   Dr. Samaras is qualified to provide the type of expert opinions contained in his report. *See* Samaras Decl.

17   Ex. 1 ("Samaras CV"). The Court finds that Dr. Samaras' testimony is sufficient to create a triable issue

18   of material fact that Dr. Schmalzried fell below the applicable standard of care.

19          Finally, the Court cannot adjudicate Plaintiff's claim for negligent retrofit or recall because it is

20   part of Plaintiff's negligence claim, and not a stand-alone claim. For the foregoing reasons, Dr.

21   Schmalzried's motion is denied as to Plaintiff's negligence claim.

22          **D.     Dr. Schmalzried is Entitled to Summary Adjudication of Plaintiff's Fraud Claim**

23          Although Plaintiff's Fifth Cause of Action for Fraud alleges both fraudulent misrepresentation and

24   concealment as to all Defendants, it appears based on Plaintiff's discovery responses that Plaintiff is

25   proceeding solely based on a fraudulent concealment theory as to Dr. Schmalzried. See Norton Decl., Ex.

26   J ("Plaintiff's Responses to Special Interrogatories, Set One") at 46-47. As discussed further below, the

27   Court finds that Plaintiff's fraud claim fails as to Dr. Schmalzried because Plaintiff failed to present any

28

- 8 -

1    evidence in support of a necessary element, i.e. that Dr. Schmalzried had a duty to disclose material facts

2    to Plaintiff or his physician.

3       The elements of a cause of action based upon fraudulent concealment are (1) a concealed or

4    suppressed material fact by defendant; (2) that the defendant was under a duty to disclose to the plaintiff;

5    (3) intent to defraud; (4) plaintiff's lack of knowledge of the suppressed fact and reliance; and (5)

6    damages. *Bigler-Engler v. Breg, Inc.* (2017) 7 Cal.App.5th 276, 310-11. In *Bigler-Engler*, a patient sued

7    her physician, the physician's medical group, and a manufacturer of a medical device for medical

8    malpractice, design defect, failure to warn, breach of fiduciary duty, intentional misrepresentation, and

9    intentional concealment. *Id.* at 291. The jury found against the manufacturer on the patient's claims for

10    design defect, failure to warn, and intentional concealment. *Id.* On appeal, the court reversed the jury

11    verdict on the intentional concealment claim, and entered judgment in the manufacturer's favor, on the

12    grounds that the patient had no evidence supporting the existence of a duty to disclose on the part of the

13    manufacturer. *Id.* at 314-15. It is well-settled law that, notwithstanding the absence of a fiduciary

14    relationship between a plaintiff and defendant, a defendant can be held liable for a non-disclosure of

15    material facts if (1) the defendant makes representations but does not disclose facts which materially

16    qualify the facts disclosed; or (2) the facts are known or accessible only to the defendant, and defendant

17    knows they are not known to or reasonably discoverable by plaintiff; or (3) the defendant actively

18    conceals discovery from the plaintiff. *Id.* at 311. However, the court held that these three circumstances

19    "presuppose the existence of" a relationship between plaintiff and defendant, such as "seller and buyer,

20    employer and prospective employee, doctor and patient, [] parties entering into any kind of contractual

21    agreement," or other "transaction" which necessarily arose from direct dealings between the plaintiff and

22    defendant. *Id.* at 311-12. The court declined to extend a manufacturer's general duty to warn the public

23    of known defects under the products liability doctrine to fraudulent concealment claims. *Id.* at 312. The

24    court stated, "[p]roducts liability law involves a set of circumstances, elements, and doctrines that are

25    independent from, and not directly applicable to, fraud. The duties underlying each cannot simply be

26    applied to the other." *Id.* Thus, where there is no sufficient relationship or transaction between the parties,

27    no duty to disclose arises even when the defendant made statements constituting "misleading half-truths."

28

1   *Id.* Because there was no evidence of a relationship between manufacturer and patient that was sufficient

2   to give rise to a duty to disclose, the court reversed the plaintiff jury verdict, and entered judgment in the

3   manufacturer's favor on the intentional concealment claim. *Id.* at 314-15.

4        Here, Dr. Schmalzried presented undisputed evidence showing there were no transactions or direct

5   dealings between him and the Plaintiff, or between him and Plaintiff's prescribing physician, Dr. Wrobel,

6   sufficient to give rise to a duty to disclose.  It is undisputed that Dr. Schmalzried had no direct

7   communications with Plaintiff or Dr. Wrobel.  UMF No. 10.  That Dr. Wrobel may have read literature on

8   metal-on-metal hip implants authored by Dr. Schmalzried, or attended presentations where Dr.

9   Schmalzried spoke about metal-on-metal hip implants, is insufficient to establish a duty to disclose under

10   the rule set forth in *Bigler-Engler*, requiring "direct dealings" between a plaintiff and defendant.  *Bigler-*

11   *Engler, supra,* 7 Cal.App.5th at 312 ("[A] transaction must necessarily arise from direct dealings between

12   the plaintiff and the defendant; it cannot arise between the defendant and the public at large").  And

13   although an affirmative statement may be so misleading as to give rise to a fraud claim even where the

14   relationship or transaction between the parties would be insufficient to give rise to a generalized duty to

15   disclose (*id.*), Plaintiff failed to present any evidence of an affirmative misrepresentation by Dr.

16   Schmalzried that was so misleading as to give rise to a duty to disclose.  In the absence of any evidence

17   showing a relationship or other transaction between Plaintiff and Dr. Schmalzried sufficient to give rise to

18   a duty to disclose, the Court finds as a matter of law that Plaintiff cannot prevail on his fraud claim as to

19   Dr. Schmalzried.

20        **E.**    **Dr. Schmalzried is Not Entitled to Summary Adjudication of Plaintiff's Punitive**
                **Damages Claim**

21

22        Dr. Schmalzried's Notice of Motion did not include Plaintiff's claim for punitive damages, and

23   therefore the motion to summarily adjudicate the punitive damages claim is procedurally improper.

24   Moreover, although the Court grants the motion as to Plaintiff's fraud claim, it does not appear that the

25   claim for punitive damages arises solely from Plaintiff's fraud claim. *See* Complaint ¶¶ 72-86.

26   / / /

27   / / /

28   / / /

- 10 -

1    IV.    **CONCLUSION**

2          Dr. Schmalzried's motion for summary judgment/adjudication is granted as to Plaintiff's fraud

3    claim, and is denied in all other respects.

4          IT IS SO ORDERED.

5

6    Dated:  March 15, 2019                                    _____

7                                                                    Mary E. Wiss
                                                                 Judge of the Superior Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*DePuy ASR* JCCP 4649 (James Pool)  Order Granting in Part and Denying in Part Dr. Schmalzried's Motion for Summary Judgment/Adjudication

**Superior Court of California**
County of San Francisco

| | |
|---|---|
| Coordination Proceeding Special Title [Rule 3.550(c)] | Judicial Council Coordination Proceeding No. 4649 |
| **DEPUY ASR HIP SYSTEM CASES** | **CERTIFICATE OF ELECTRONIC SERVICE** (CCP 1010.6(6) & CRC 2.260(g)) |

I, T. Michael Yuen, Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On March 15, 2019, I electronically served the ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT THOMAS SCHMALZRIED, M.D.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION via File&ServeXPress® on the recipients designated on the Transaction Receipt located on the File&ServeXPress® website.

Dated:  March 15, 2019

T. Michael Yuen, Clerk

By:  _____
Sean Kane, Deputy Clerk

**COPY**

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Brian D. Chase, Esq. (SBN 164109)<br>Tom Antunovich, Esq. (SBN 305216)<br>BISNAR \| CHASE LLP<br>1301 Dove. St., Suite 120<br>Newport Beach, CA 92600<br>TELEPHONE NO.: (949) 752-2999   FAX NO.: (949) 752-2777<br>ATTORNEY FOR *(Name):* Plaintiff, Diane Finley | *FOR COURT USE ONLY*<br><br>**CONFORMED COPY**<br>**ORIGINAL FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>APR 0 1 2021<br><br>Sherri R. Carter, Executive Officer/Clerk of Court |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME: Finley v. Depuy Orthopaedics, Inc., et al.

**BY FAX**

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 21STCV12473<br>JUDGE:<br>DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22)<br>[ ] Uninsured motorist (46) | [ ] Breach of contract/warranty (06)<br>[ ] Rule 3.740 collections (09)<br>[ ] Other collections (09)<br>[ ] Insurance coverage (18)<br>[ ] Other contract (37) | **(Cal. Rules of Court, rules 3.400-3.403)**<br>[ ] Antitrust/Trade regulation (03)<br>[ ] Construction defect (10)<br>[X] Mass tort (40)<br>[ ] Securities litigation (28)<br>[ ] Environmental/Toxic tort (30) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**<br>[ ] Asbestos (04)<br>[ ] Product liability (24)<br>[ ] Medical malpractice (45)<br>[ ] Other PI/PD/WD (23) | **Real Property**<br>[ ] Eminent domain/Inverse condemnation (14)<br>[ ] Wrongful eviction (33)<br>[ ] Other real property (26) | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| **Non-PI/PD/WD (Other) Tort**<br>[ ] Business tort/unfair business practice (07)<br>[ ] Civil rights (08)<br>[ ] Defamation (13)<br>[ ] Fraud (16)<br>[ ] Intellectual property (19)<br>[ ] Professional negligence (25)<br>[ ] Other non-PI/PD/WD tort (35) | **Unlawful Detainer**<br>[ ] Commercial (31)<br>[ ] Residential (32)<br>[ ] Drugs (38)<br>**Judicial Review**<br>[ ] Asset forfeiture (05)<br>[ ] Petition re: arbitration award (11) | **Enforcement of Judgment**<br>[ ] Enforcement of judgment (20)<br>**Miscellaneous Civil Complaint**<br>[ ] RICO (27)<br>[ ] Other complaint *(not specified above)* (42)<br>**Miscellaneous Civil Petition**<br>[ ] Partnership and corporate governance (21) |
| **Employment**<br>[ ] Wrongful termination (36)<br>[ ] Other employment (15) | [ ] Writ of mandate (02)<br>[ ] Other judicial review (39) | [ ] Other petition *(not specified above)* (43) |

2. This case [X] is [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [X] Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve   in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [ ] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive

4. Number of causes of action *(specify):* Six

5. This case [ ] is [X] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 1, 2021

Tom Antunovich, Esq. (SBN 305216)
(TYPE OR PRINT NAME)          ►          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |
|---|---|---|

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach—Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case—Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief from Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

# COPY

| | |
|---|---|
| SHORT TITLE: Finley v. Depuy Orthopaedics, Inc., et al. | CASE NUMBER **21 ST CV12473** |

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**BY FAX**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

> ### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.

2. Permissive filing in central district.

3. Location where cause of action arose.

4. Mandatory personal injury filing in North District.

5. Location where performance required or defendant resides.

6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.

8. Location wherein defendant/respondent functions wholly.

9. Location where one or more of the parties reside.

10. Location of Labor Commissioner Office.

11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Finley v. Depuy Orthopaedics, Inc., et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3; 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation    Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032 Quiet Title | 2, 6 |
| | | ☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2, 6, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

| SHORT TITLE: Finley v. Depuy Orthopaedics, Inc., et al. | | CASE NUMBER |
|---|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108   Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115   Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151   Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152   Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153   Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150   Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003   Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007   Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☑ A6006   Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035   Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036   Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014   Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141   Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160   Abstract of Judgment | 2, 6 |
| | | ☐ A6107   Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140   Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114   Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112   Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033   Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030   Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040   Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011   Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000   Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113   Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121   Civil Harassment With Damages | 2, 3, 9 |
| | | ☐ A6123   Workplace Harassment With Damages | 2, 3, 9 |
| | | ☐ A6124   Elder/Dependent Adult Abuse Case With Damages | 2, 3, 9 |
| | | ☐ A6190   Election Contest | 2 |
| | | ☐ A6110   Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170   Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100   Other Civil Petition | 2, 9 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

| SHORT TITLE: Finley v. Depuy Orthopaedics, Inc., et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:  ☐ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☑ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS:  2200 West Third St., Suite 400 |
|---|---|

| CITY:  Los Angeles | STATE:  CA | ZIP CODE:  90057 |
|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the Central _____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: April 1, 2021

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

# COPY

CM-015

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Brian D. Chase, Esq. (SBN 164109)<br>Tom Antunovich, Esq. (SBN 305216)<br>BISNAR\|CHASE LLP<br>1301 Dove. St., Suite 120, Newport Beach, CA 92600<br>TELEPHONE NO.: (949) 752-2999   FAX NO. *(Optional):* (949) 752-2777<br>E-MAIL ADDRESS *(Optional):*  tantunovich@bisnarchase.com<br>ATTORNEY FOR *(Name):*  Plaintiff, Diane Finley | **FOR COURT USE ONLY**<br><br>**CONFORMED COPY<br>ORIGINAL FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>**APR 01 2021**<br><br>Sherri R. Carter, Executive Officer/Clerk of Court |

| |
|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles<br>STREET ADDRESS: 111 North Hill Street<br>MAILING ADDRESS: 111 North Hill Street<br>CITY AND ZIP CODE: Los Angeles, CA 90012<br>BRANCH NAME: Stanley Mosk Courthouse |

**BY FAX**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Diane Finley | **CASE NUMBER:**<br>**21STCV12473** |
| DEFENDANT/RESPONDENT:  Depuy Orthopaedics, Inc., et al. | JUDICIAL OFFICER: |

| | |
|---|---|
| **NOTICE OF RELATED CASE** | DEPT.: |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1.  a.  Title: DePuy Pinnacle Hip System Cases

    b.  Case number:  JCCP 4662

    c.  Court: ☐ same as above

            ☑ other state or federal court *(name and address):* Superior Court of California, San Fransisco County

    d.  Department: 304

    e.  Case type: ☐ limited civil ☑ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

    f.  Filing date: July 14, 2016

    g.  Has this case been designated or determined as "complex?" ☑ Yes ☐ No

    h.  Relationship of this case to the case referenced above *(check all that apply):*

        ☐ involves the same parties and is based on the same or similar claims.

        ☑ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

        ☐ involves claims against, title to, possession of, or damages to the same property.

        ☑ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

           ☐ Additional explanation is attached in attachment 1h

    i.  Status of case:

        ☑ pending

        ☐ dismissed ☐ with ☐ without prejudice

        ☐ disposed of by judgment

2.  a.  Title:

    b.  Case number:

    c.  Court: ☐ same as above

            ☐ other state or federal court *(name and address):*

    d.  Department:

Page 1 of 3

CM-015

| PLAINTIFF/PETITIONER: Diane Finley | CASE NUMBER: |
| DEFENDANT/RESPONDENT: Depuy Orthopaedics, Inc., et al. | |

2. *(continued)*

   e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f. Filing date:

   g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      ☐ involves the same parties and is based on the same or similar claims.

      ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐ involves claims against, title to, possession of, or damages to the same property.

      ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

        ☐ Additional explanation is attached in attachment 2h

   i. Status of case:

      ☐ pending

      ☐ dismissed ☐ with ☐ without prejudice

      ☐ disposed of by judgment

3. a. Title:

   b. Case number:

   c. Court: ☐ same as above

      ☐ other state or federal court *(name and address):*

   d. Department:

   e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f. Filing date:

   g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      ☐ involves the same parties and is based on the same or similar claims.

      ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐ involves claims against, title to, possession of, or damages to the same property.

      ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

      ☐ Additional explanation is attached in attachment 3h

   i. Status of case:

      ☐ pending

      ☐ dismissed ☐ with ☐ without prejudice

      ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: April 1, 2021

Tom Antunovich, Esq.
_____
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

CM-015

| | CASE NUMBER: |
|---|---|
| PLAINTIFF/PETITIONER: Diane Finley | |
| DEFENDANT/RESPONDENT: Depuy Orthopaedics, Inc., et al. | |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*
   a. ☐ deposited the sealed envelope with the United States Postal Service.
   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:
   a. on *(date):*
   b. from *(city and state):*

4. The envelope was addressed and mailed as follows:
   a. Name of person served:          c. Name of person served:

      Street address:                     Street address:
      City:                               City:
      State and zip code:                 State and zip code:

   b. Name of person served:          d. Name of person served:

      Street address:                     Street address:
      City:                               City:
      State and zip code:                 State and zip code:

☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____        ▶  _____
(TYPE OR PRINT NAME OF DECLARANT)              (SIGNATURE OF DECLARANT)

 **Superior Court of California, County of Los Angeles**

---

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

### What is ADR?
ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control (with the parties):** Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR:

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all.  Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   Mediation may be appropriate when the parties
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   Mediation may **not** be appropriate when the parties
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

LASC CIV 271 Rev. 01/20
For Mandatory Use

1

### How to arrange mediation in Los Angeles County

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases):

   - **ADR Services, Inc.** Case Manager patricia@adrservices.com (310) 201-0010 (Ext. 261)
   - **JAMS, Inc.** Senior Case Manager mbinder@jamsadr.com (310) 309-6204
   - **Mediation Center of Los Angeles (MCLA)** Program Manager info@mediationLA.org (833) 476-9145
     - Only MCLA provides mediation in person, by phone and by videoconference.

**These organizations cannot accept every case and they may decline cases at their discretion.**
   Visit www.lacourt.org/ADR.Res.List for important information and FAQs before contacting them.
   NOTE:  This program does not accept family law, probate, or small claims cases.

b. **Los Angeles County Dispute Resolution Programs**
   https://wdacs.lacounty.gov/programs/drp/
     - Small claims, unlawful detainers (evictions) and, at the Spring Street Courthouse, limited civil:
       - Free, day- of- trial mediations at the courthouse. No appointment needed.
       - Free or low-cost mediations before the day of trial.
       - For free or low-cost Online Dispute Resolution (ODR) by phone or computer before the day of trial visit
         http://www.lacourt.org/division/smallclaims/pdf/OnlineDisputeResolutionFlyer-EngSpan.pdf

c. **Mediators and ADR and Bar organizations** that provide mediation may be found on the internet.

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit  http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial.  The parties and their attorneys meet with a judge or settlement officer who does not make a decision but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.  For information about the Court's MSC programs for civil cases, visit  http://www.lacourt.org/division/civil/CI0047.aspx

**Los Angeles Superior Court ADR website:**  http://www.lacourt.org/division/civil/CI0109.aspx
**For general information and videos about ADR, visit** http://www.courts.ca.gov/programs-adr.htm

LASC CIV 271 Rev. 01/20
For Mandatory Use

2

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**

abtl

**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

TELEPHONE NO.:              FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the  complaint, and _____ for the cross-
            (INSERT DATE)                             (INSERT DATE)
    complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case.  The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____                    ➤ _____
(TYPE OR PRINT NAME)                                       (ATTORNEY FOR PLAINTIFF)
Date:

_____                    ➤ _____
(TYPE OR PRINT NAME)                                       (ATTORNEY FOR DEFENDANT)
Date:

_____                    ➤ _____
(TYPE OR PRINT NAME)                                       (ATTORNEY FOR DEFENDANT)
Date:

_____                    ➤ _____
(TYPE OR PRINT NAME)                                       (ATTORNEY FOR DEFENDANT)
Date:

_____                    ➤ _____
(TYPE OR PRINT NAME)                                       (ATTORNEY FOR _____)
Date:

_____                    ➤ _____
(TYPE OR PRINT NAME)                                       (ATTORNEY FOR _____)
Date:

_____                    ➤ _____
(TYPE OR PRINT NAME)                                       (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

---

LACIV 036 (new)<br>LASC Approved 04/11<br>For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 1 of 3

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | | CASE NUMBER: |
|---|---|---|
| | | |

**The following parties stipulate:**

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                               (ATTORNEY FOR PLAINTIFF)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                               (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                               (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                               (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                               (ATTORNEY FOR _____)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                               (ATTORNEY FOR _____)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                               (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:          FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐   Request for Informal Discovery Conference
   ☐   Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, briefly describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, briefly describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:  FAX NO. (Optional): <br> E-MAIL ADDRESS (Optional): <br> ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR PLAINTIFF)

Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR DEFENDANT)

Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR DEFENDANT)

Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR DEFENDANT)

Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR _____)

Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR _____)

Date:

_____        ➢ _____
(TYPE OR PRINT NAME)                         (ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date:   _____        _____
                                                        JUDICIAL OFFICER